IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 24, 2011

## STATE OF TENNESSEE v. DONALD A. JAHR, JR.

**Appeal from the Circuit Court for Blount County**
**No. C-18592     David R. Duggan, Judge**

**No. E2010-02288-CCA-R3-CD - Filed August 16, 2011**

The Defendant, Donald A. Jahr, Jr., appeals as of right from the Blount County Circuit Court's revocation of his probation and order of incarceration. The Defendant contends that the trial court erred by ordering the previously imposed sentence to be served in confinement. Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

Raymond Mack Garner, District Public Defender (at trial), and J. Liddell Kirk, Knoxville, Tennessee (on appeal), for the appellant, Donald A. Jahr, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Matthew Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On May 10, 2010, the Defendant pled guilty to one count of promotion of the manufacturing of methamphetamine. See Tenn. Code Ann. § 39-17-433. The Defendant was sentenced to three years with six months to be served in confinement and the remainder to be served on supervised probation. In addition to the usual terms of probation, the trial court entered a supplemental probation order, which provided that the Defendant undergo an alcohol and drug assessment, enter an eight week or longer anger management class, undergo a mental health assessment, pay his fines and court costs, "report any change of address to his probation officer," and "report to the probation officer either in person or in

writing, as the probation officer directs." The order also provided that the Defendant "shall not move his residence out of Blount County without permission by prior order" of the trial court.

Prior to the entry of the guilty plea, a pre-sentence report compiled by the Board of Probation and Parole was filed in the trial court. The report noted that after the Defendant was released on bond, he "failed to contact the probation officer . . . to set up an appointment for his pre-sentence interview." The probation officer "tried several times to contact" the Defendant, but the officer never received a response. The probation officer eventually sent an appointment card to the Defendant via the Defendant's girlfriend. When he received the card, the Defendant called the probation officer to change the appointment. The probation officer explained that the deadline for the report "was too close" and that he could not reschedule the appointment. The Defendant "became upset" and told the probation officer he "had to be home to get [his] son when he came home from school." The probation officer told the Defendant "to get a sitter" because "the report was very important." The Defendant "became more upset and continued to argue" with the probation officer. The probation officer informed the Defendant that if he did not come for the appointment, the report would show that he refused to cooperate with the pre-sentence investigation. The Defendant told the probation officer that "everyone up there is a bunch of damned assholes" and hung up the phone. However, the Defendant eventually showed up for the appointment and apologized for his behavior.

The Defendant was released from the Blount County Justice Center on June 22, 2010. On July 29, 2010, a probation violation report was filed with the trial court. The report alleged that the Defendant failed to report to his probation officer following his release and failed to report to a scheduled Administrative Case Review Committee (ACRC) meeting on July 21, 2010. The report also alleged that the Defendant had failed to make payments toward his probation fees, court costs, and fines; undergo an alcohol and drug assessment; undergo a mental health assessment; enter an anger management class; and submit a DNA sample. A probation violation warrant was issued on August 2, 2010. The warrant was amended on September 2, 2010, to add that the Defendant's whereabouts were unknown and that he was "considered an absconder from probation."

A revocation hearing was held on October 25, 2010. The Defendant's probation officer, Jessica Fritz, testified that the hearing was "the first time [she had] seen" the Defendant. Officer Fritz testified that she sent the Defendant a letter on May 11, 2010, informing him that "as part of his probation agreement [] he [had] to contact [her] within 48 hours of his release." In the letter, Officer Fritz gave the Defendant her name, address, and phone number and told him "that failure to comply would result in a violation being submitted" to the trial court. Officer Fritz testified that she received a letter from the

Defendant "stating that he wanted to get his probation transferred to Cookeville" but when she tried to contact him she "never got a reply." Officer Fritz "sent another letter on [July 7, 2010,] stating that [the Defendant] need[ed] to contact [her]" and "never got a reply." Officer Fritz sent yet another letter stating that the Defendant "had been scheduled for an ACRC [meeting] on July 21, 2010." Officer Fritz also testified that the Defendant, since his release, had failed to undergo an alcohol and drug assessment, undergo a mental health assessment, enroll in anger management class, or pay his fines and court costs.

The Defendant testified that two weeks prior to his release, he sent a letter to Officer Fritz with his name and address, asking that his "probation be transferred to Cumberland County." The Defendant testified that he never received any letters from Officer Fritz. According to the Defendant, since he "got no reply" from Officer Fritz, he contacted "the probation office in Crossville," but "they didn't know nothing about it." The Defendant "waited another three weeks and still nothing." The Defendant testified that while he was waiting, he was evicted from his home and "stayed at a homeless shelter for a week or two" before moving in with a friend. According to the Defendant, he did not report because he did not know what he was "supposed to do," and he did not comply with the special conditions of his release because he did not "know where to go to do that." The Defendant testified that if he were placed back on probation, he would report to his probation officer and follow the conditions of his release. Defense counsel requested that the trial court sentence the Defendant to 30 days and allow him to serve the remainder of his sentence on community corrections because his violation was "not a willful one."

The trial court concluded that the Defendant had "materially violated the terms" of his probation by

> failing to report [] to probation since [his] release from the jail on June 22, 2010; failing to report for [his] ACRC meeting on July 21, 2010; failing to undergo an alcohol and drug assessment and mental health assessment; failing to enter anger management classes; and failing . . . to provide a DNA sample.

The trial court also concluded that the Defendant was "an absconder from probation." According to the trial court, the Defendant had "failed completely to do anything that [he was] supposed to do to take advantage of [his] opportunity to be on probation." Accordingly, the trial court revoked the Defendant's probation and ordered the Defendant to serve the remainder of his sentence in confinement.

<u>ANALYSIS</u>

The Defendant does not challenge the trial court's decision to revoke his probation. Instead, the Defendant contends that "[g]iven the nature of the violation and [his] apparent willingness to be more responsible in his reporting requirements in the future," the trial court erred by incarcerating him instead of placing him back on probation. The State responds that "there is ample evidence in the record to support the trial court's findings" and that it was well within the trial court's discretion to revoke the Defendant's probation and order the remainder of his original sentence to be served in confinement.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of his release. Tenn. Code Ann. § 40-35-311(e). A trial court is not required to find that a violation of probation occurred beyond a reasonable doubt. Stamps v. State, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). "The evidence need only show [that the trial court] has exercised conscientious judgment in making the decision rather than acting arbitrarily." Id. In reviewing the trial court's finding, it is our obligation to examine the record and determine whether the trial court has exercised a conscientious, rather than an arbitrary, judgment. State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). In order to conclude that the trial court abused its discretion, there must be no substantial evidence to support the determination of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)). Upon concluding that a defendant has violated the conditions of his release, the trial court may revoke the probationary sentence and either "commence the execution of the judgment as originally entered" or "[r]esentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration." Tenn. Code Ann. § 40-35-311(e).

The record shows that the trial court made a conscientious judgment in deciding to incarcerate the Defendant. The State proved, by a preponderance of the evidence, that the Defendant violated the terms of his probation by failing to report to his probation officer and by failing to comply with the special conditions of his release. As the trial court stated, the Defendant did "absolutely nothing to take advantage of the opportunity to stay out of a jail and be on probation." The fact that the Defendant was able to send Officer Fritz a letter requesting that his probation be transferred to Cumberland County belies his assertion that he did not know how to contact her. Furthermore, the pre-sentence report reflects that the Defendant had previously failed to report to the Board of Probation and Parole when required to do so and ignored repeated attempts by a probation officer to contact him. When the probation officer was eventually able to contact the Defendant, he became angry and belligerent when the officer refused to reschedule his pre-sentence interview. The reporting requirements and the special conditions of the Defendant's probation were not mere

-4-

bureaucratic formalities that the Defendant could ignore without consequence. The trial court was justified in ordering the Defendant to serve the remainder of his sentence in confinement given that he made absolutely no effort to comply with the terms of his release and his conduct, which began with the defiance he directed at the pre-sentence officer. Accordingly, we affirm the judgment of the trial court.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE